## Case No. 17,455.

### WESTON v. PENNIMAN.

[1 Mason, 306.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1817.

SHIPPING—REGISTRY ACTS—TRANSFER OF TITLE—EQUITABLE TITLES—NEGOTIABLE INSTRUMENTS—DRAFTS.

1. The ship registry acts of the United States have not changed the common law as to the mode, in which ships may be transferred; but only take from any ship not transferred according to those acts the character of an American ship.

[Distinguished in The Amelie, 6 Wall. (73 U. S.) 30. Cited in Leland v. The Medora, Case No. 8,237.]

[Cited in Stearns v. Doe. 12 Gray, 486.]

2. By the general maritime law, a transfer of a ship should be evidenced by a bill of sale.

[Cited in brief in Rice v. McLarren, 42 Me. 160. Cited in Sprague v. Thurber, 17 R. I. 459, 22 Atl. 1058.]

3. The legal title in a registered ship, may, consistently with the acts, exist in one person, and the equitable title in another; and the disclosure of such equitable title is not required by the acts, unless one party be an alien.

[Cited in U. S. v. The Fideliter, Case No. 15,-088; Scudder v. Calais S. B. Co., Id. 12,-566; U. S. v. The F. W. Johnson, Id. 15,-179.]

4. If a draft not negotiable, be accepted by the drawee, with an agreement to pay the amount to any person to whom it is assigned; the assignee after notice, may maintain an action for money had and received to his use against the acceptor.

[Cited in Bank of U. S. v. Jackson, 9 Leigh (Va.) 228; Burnham v. Wood, 8 N. H. 337; Tenny v. Sanborn, 5 N. H. 557.]

Assumpsit. 1st. For money had and received. 2dly. On an order dated on the 8th of September, 1814; drawn by Silas Penniman, payable to Amos Penniman, or order, and accepted by the defendant on the 8th day of September, 1815. and endorsed to the plaintiff [Asahel Weston]. Plea the general issue. The order produced on the trial, was as follows:

"Boston, September 8th, 1814. Mr. James Penniman, Sir,—Please to pay Amos Penniman, or order, all the net proceeds, which you may realize on a certain note of hand, signed by me, of this date, payable to you, for five thousand five hundred dollars, and secured by mortgage on real estate in Newbury street. Also all the net proceeds, which you may realize on a certain note of hand signed by me, of this date, payable to you, for six thousand five hundred dollars, and secured by mortgage on real estate in Broad Street. Silas Penniman.

"Boston, September 8th, 1815. Accepted, to pay the proceeds of the above, after deducting all expenses, and what may be due to James Penniman and Co. James Penniman."

It was admitted, that the defendant had received on the account of Silas Penniman, as the proceeds of the property mentioned in the

[1] [Reported by William P. Mason, Esq.]

order, the sum of $2639.60. But he claimed a right to appropriate the whole proceeds, in discharge of certain demands due to him from the said Silas. These demands were as follows. On the 17th of June, 1815, the defendant had contracted for the purchase of a ship, and the said Silas agreed to become interested in a moiety of her; and until he should make due payment for his share, it was agreed, that the plaintiff should hold the ship in his own name. The agreement or contract of the parties was evidenced in the following writing:

"Boston, June 17th, 1815. Messrs. James Penniman and Co. Gentlemen,—I hand you twelve hundred dollars, and authorize you to invest it in a new ship on North river, built by Mr. Sampson, near the bridge on said river. And you are authorized to purchase one half said ship at twenty-three dollars per ton, for me, and on my account; and fit her for sea, to sail in your names, for your security for the future payments, until my payments to you are completed for said half. And I authorize you to make insurance, and employ her in freighting. as you shall judge best. And in case I fail to make the future payments, in due season for you to meet your payments for the said ship, I authorize you to sell her on my account for the payment of the same. Silas Penniman."

It was in evidence, that the sum of $1200 referred to in the above letter was again drawn out of the hands of James Penniman and Co. by a draft of the said Silas Penniman upon them for that amount. On the 20th of July, 1815, the defendant took out a register for the ship, in his own name, as sole owner; and continued to employ her in his own name, until October, 1816, when she was sold at a considerable loss. The defendant's demands were for expenses and disbursements beyond the earnings of the ship; and for a moiety of the purchase-money, after deducting therefrom a moiety of the proceeds of the sale; which demands, if admissible in point of law, and duly proved in point of fact, were sufficient to absorb all the money received by the defendant.

Webster & Peabody, for defendant,

Contended, that the laws of the United States did not prevent the assertion of an equitable interest in American ships. notwithstanding the registry was in the name of others, if those setting up this equitable interest, or in whom it was alleged to exist, were American citizens. The object of the law was to prevent the privileges of American ships from being enjoyed by foreigners; and it had been accordingly decided, that no foreigner could set up an equitable interest in such ship, because that would be permitting the end of the law to be entirely defeated. Maybin v. Coulon, 4 Dall. [4 U. S.] 298; Duncanson v. M'Lure, Id. 308; Id. 342. But American citizens, although not named in the registry, might have an interest in American vessels,

which they could assert against those, who are named in it. As between the parties themselves, equitable rights and interests might be regarded, without any infringement upon the law. The defendant, it is true, has sworn, on obtaining the registry, that he was the sole owner. But this means no more than that he was the sole legal owner. The law requires him to aver, in explicit terms, that "there is no subject or citizen of any foreign prince or state, directly or indirectly, by way of confidence, trust, or otherwise, interested in such ship or vessel, or in the profits or issues thereof." 2 Colvin's Laws, c. 146, § 4 [1 Stat. 289, c. 1]. But it does not require him to deny, in like manner, that any citizen of the United States is interested in the vessel. by way of trust or confidence. If the bare declaration, that he was sole owner, had been understood to negative the existence of any sort of interest in any other persons, this subsequent provision would have been unnecessary. But the act requires an express denial of any trust for the benefit of foreigners. By making this provision for the case of foreigners, the legislature has put a construction on the former part of the oath; and by confining it to the case of foreigners, it has permitted the existence of equitable interests in American ships, in American citizens. There is an essential difference between the law of the United States and the British registry act, in relation to this question. The British statute requires the person applying for registry, not only to make oath, that he is the sole owner, but also that "no other person or persons whatever, hath or have any right, title, interest, share, or property therein, or thereto." 26 Geo. III. c. 60, § 10. This latter provision seems to have been purposely omitted by those, who framed the act of congress, and who incorporated into it the principal provisions of the British act. The British statute also provides, that the sale of a registered ship can only be made by a bill of sale. which shall truly and accurately recite the certificate of registry; and declares that, any bill of sale, without such recital, "shall be utterly null and void, to all intents and purposes." But the act of congress contains no such provision. An American ship may be legally transferred by any proper written instrument, although it does not recite the registry. The property will pass. But the difference is, that although the purchaser becomes owner of the ship, she is not. in his hands. entitled to a new registry, nor to the privileges of an American vessel. These can be obtained only by taking a bill of sale, in which the certificate of registry is recited at length. 2 Colvin's Laws, 321 (Act Concerning Registry of Vessels) § 14 [1 Stat. 287].

The learned author of the treatise on ships and seamen, refers to the American registry act, which, he says, contains provisions, corresponding in the greater part, with those of the statute of 26 Geo. III.; but he does

not notice the differences between the two acts in relation to the question arising in this case. Abb. Shipp. (4th Lond. Ed.) p. 28. His American annotator takes notice of this difference. Id. (Am. Ed.) 58. Following the express and unequivocal declaration of the act of parliament, the English courts have holden, that no equitable interests, even in British subjects, can be alleged, in contradiction to the statement contained in the register. Camden v. Anderson, 5 Term R. 709; Curtis v. Perry, 6 Ves. 739; Ex parte Yallop, 15 Ves. 60; Ex parte Houghton, 17 Ves. 252. This provision seems to have been a favorite object with parliament, for in consequence of some doubts said to have been expressed in regard to the case of Hibbert v. Rolleston (3 Brown Ch. 571), the act of 34 Geo. III. c. 68, was passed, re-enacting the provision of the former act, in the strongest and most comprehensive forms of expression. Curtis v. Perry, ut supra; Abb. Shipp. 542. The congress of the United States appears to have entertained no such purpose. They have made no such provision. On the contrary, it is the necessary inference from the whole act, that they intentionally departed, in this respect, from the English statute, which was their general model; and, having provided against equitable interests in foreigners, left such interests nevertheless to be asserted, as in other cases, by American citizens. A ship, entitled to the privileges of an American vessel, cannot be legally owned by a foreigner; nor can a foreigner claim any right or interest therein, in law or equity. But such ship may be owned by an American citizen. And she may be owned by one American citizen in trust for another; because other chattels may be so owned, and because such trust is not prohibited by the provisions, nor in opposition to the policy of the law. If the purchase in this case had been profitable, Silas Penniman might have compelled the defendant to permit him to partake in the profits; and as there was a loss, it is competent for the defendant to call on the said Silas Penniman to bear that portion of the loss, which he ought to bear, according to his agreement.

But there is another ground, on which the evidence is admissible. The agreement in this case was executory. It was not a purchase, but an agreement to purchase; and no case is produced, in which it has been decided under the English act of 20 Geo. III., that an agreement to sell was void, unless such agreement recited the registry. On the contrary, in Addis v. Baker, Anstr. 223, M'Donald Chief Baron, says, "The question, whether St. 26 Geo. III. attaches on an agreement for the sale of a ship, as well as on the actual sale, is very important. I am not at present prepared to say, that it does extend so far." It does not appear from the report, whether a final decision of the question was made in that case. Shortly after this opin-

ion was intimated, by the court of exchequer, the statute of 34 Geo. III. c. 68, was passed, which provides, in explicit terms, that no transfer, contract, or agreement for transfer of property, in any ship or vessel, shall be valid or effectual for any purpose whatsoever, either in law or equity, unless such transfer, or contract, or agreement for transfer, shall be made by bill of sale or instrument in writing, containing a recital of the certificate of registry. This act left no room for further question in the English courts. But if the question had rested solely on the 26 Geo. III., it is probable from the case of Addis v. Baker, that it would have been decided, that an agreement to sell was not within the provisions of that act. As before observed, the laws of the United States contain no provision similar to those in this act of the British parliament. There is nothing in the oath, taken by the defendant at the custom house, at all inconsistent with the present defence. He made oath, that he was the sole owner. Upon the supposition, that this was a denial of all sorts of interest in any body else, by way of trust or otherwise, which is not admitted, still the averment would be true. Silas Penniman at that time did not own any part of the vessel. He had agreed to buy one half; but it still rested in contract. He afterwards refused to take and pay for, that half; and this breach of contract forms the ground of the defendant's complaint. If the defendant had sworn at the custom house, that Silas Penniman owned one half of the ship, it would not have been correct. He did not own any part of it. But that does not prevent the defendant from charging him with one half of the cost of the vessel, and one half the loss incurred on it; because such was the agreement of the party, and there is nothing in the oath taken by the defendant, either in any degree inconsistent with the facts of the case, or with his defence in this action. Silas Penniman, he says, agreed to become owner of one half of this ship, and to share, in that proportion, in the profits and losses which might arise from the purchase; and he insists that he has a right to enforce this agreement, and to retain out of this fund, a sum equal to what he has lost by Silas Penniman's failing to comply with his contract.

Mr. Welsh, for plaintiff.

All maritime nations have been extremely careful in enacting, from time to time, strict laws in relation to the evidence of property in vessels; and all have excluded foreigners from any participation in the ownership or emoluments, derived from the employment of them. They have carried their jealousy on this subject so far as to require, that all, who are interested in ships or vessels, should appear so by the legal evidences of such property. It is evidently the policy of the state to prevent secret trusts or secret ownership, in regard to vessels. And so it was consid-

ered in England; for while the case of Addis v. Baker, Anstr. 223, was under the advisement of the court, the parliament passed an act, putting at rest the question, which was raised in the case, viz. whether the statute of 20 Geo. III. extended to agreements to sell, as well as to actual sales. There is every reason to suppose, that if that act had not passed, until after the decision in the case of Addis v. Baker, that that decision would have been in conformity with the spirit of it. The legislature of this country had a like opinion of the importance of this subject to the nation; and in the 4th section of the act of 31st of December, 1792, we find it pointed out, in what manner a citizen of the United States, wishing to obtain a certificate of registry, must proceed; and what things must be done, before he shall become entitled to it. It is there declared, that a register shall be granted on condition, that the person applying for it shall, among other things, declare on oath, "his or her name and place of abode, and if he or she be sole owners of the said ship or vessel, that such is the fact; or if there be another owner, or other owners, that there is, or are such other owners, specifying his, her, or their name or names and place or places of abode; and that he, she, or they, as the case may be, so swearing or affirming, is or are citizens of the United States." There is no necessity for recurring to English authorities to ascertain the meaning of our own laws on this subject. It has been argued in the argument, that our statute does not contain a provision, which is found in the English statute on the same subject; and that the American statute does not require, that all the owners of a registered vessel of the United States, should be mentioned in the bill of sale and register. It is true, that no positive provision, requiring the mention of all the owners' names in the register, is found in our laws; but there are provisions, from which it must undeniably be inferred, that such was the intention of congress. In the 4th section, which prescribes the form of the register, there are words, which evidently imply such an intention. It is there required, that, where there is more than one owner, the name or names of such other owners shall be inserted in the register. This requirement in the form of the register is as effectual, as if the statute had declared, that the names of all the owners should be inserted in it. This cannot apply to foreign citizens; they are by another section excluded from all participation in property in American vessels; of course their "name or names" could not be here intended. The only way, in which this provision of the statute can have effect, is by applying it to American citizens; then to make an American citizen a legal owner, entitled to the privileges and subject to the liabilities of that character, his name should be inserted in the register. The defendant has sworn at the custom house, that he was the sole owner, and Silas Penniman's name was

not inserted in the ship's register; he, therefore, cannot be charged, as such, with his proportion of the sums lost in her voyages; and they ought not to be deducted from the proceeds of the property, which the defendant has by the obligation declared or acknowledged, that he had received, and promised to account for.

Although there was an extensive authority given by Silas Penniman's letter of the 17th of June, 1815, to the defendant, to employ the ship in freighting, in any way he might judge best, it certainly cannot be pretended, that there was to be no limitation to this authority; and that all right to information, as to the success of the employment of the ship, was waived by Silas Penniman. If, after the first voyage, it appeared, that a loss had been incurred, and that there was no prospect of employing the ship profitably in future, why was he not advised of it. If he had been consulted, he might have thought it most prudent to put up with the first loss, dispose of the ship for the most she would produce, and thus end a ruinous concern. It would have been the grossest injustice to have told him, that, by his agreement to become interested in the ship, which was then building, he had entrusted the management of her to the defendant, and that he had no right to terminate his interests in her, although he was satisfied, that she could not be profitably employed in the manner contemplated by the agreement. If the agreement be only executory, and resting in contract, the claim for indemnification against Silas Penniman would not be for his proportion of the losses sustained in the use of the ship in freighting, but merely the difference between the amount of the payment necessary to the completion of this ship, and her real value when finished; that is, if in consequence of any event, such as a depreciation in the value of vessels, she was worth less when finished, than it cost to build her; because Silas Penniman agrees to become interested in one half of the ship, and in case he should not make the necessary payments in due season, authorizes James Penniman to sell her, to reimburse the sums expended by him on account of the half, which the former engages to take. There was no demand made on him for his proportion of the costs, when she was finished, and entitled to a register, and no notice of an intention to sell until October, 1816, when it was ascertained, that it had been a losing concern. There is no evidence to show, that she was not worth at the time she went to sea, what it cost to build her. It was at this time, that the right to sell vested by the agreement in the defendant, in case it appeared, that Silas Penniman was unable or unwilling to perform his engagement.

There is no equity in the defendant's claim, to set off one half of the loss incurred by him in the employment of his vessel, because he allowed Silas Penniman to draw on him for

the sum of $1200, shortly after the payment of that sum, on the 17th of June, 1815; and as there is no evidence of any other money transactions between them at that time, there is strong reason to suspect, that by accepting to pay that sum, it was understood, that the agreement to become concerned in the ship was waived by James Penniman.

STORY, Circuit Justice (after summing up the facts). There are some questions of law in this cause, upon which it is my duty to give an explicit instruction. The first is, whether the legal title to a ship can, since the registry acts of the United States, be transferred, without complying with the forms prescribed in those acts. Acts Dec. 31, 1792, c. 1 [1 Stat. 287], and Feb. 18, 1793, c. 8 [Id. 305]. Upon this question the right of the defendant to set off or deduct his own demands for expenses and disbursements from the proceeds in his hands, materially depends. And I am of opinion, that the registry acts have not, in any degree, changed the common law as to the manner of transferring this species of property. To be sure, a bill of sale is necessary to pass the title of a ship. But this does not depend upon any enactment peculiar to our municipal law; but it grows out of the general maritime law, which requires such a document as the proper muniment of the title of the ship. The Sisters, 5 C. Rob. Adm. 155. To entitle ships to be registered, and to be deemed ships of the United States, with the privileges and exemptions of such ships, it is necessary, that the transfer should be made according to the form prescribed in the registry acts; that is to say, that it should be by some instrument in writing, which shall recite at length the certificate of registry; but the acts do not declare any other transfer void and illegal; but simply deny to ships transferred in any other manner the privileges of ships of the United States, and deem them alien or foreign ships. In this respect our acts differ from the English registry acts (26 Geo. III. c. 60, § 17; 34 Geo. III. c. 68, § 14; Abb. Shipp. pt. 1, c. 2, § 16), which declare, that all transfers, or agreements for transfers, made without reciting the certificate of registry at length in the bill or instrument of sale or agreement for transfer, shall be utterly void to all intents and purposes whatsoever.

In the next place it is contended, that the defendant cannot set up, in this case, any title to one moiety of the ship in Mr. Silas Penniman, and charge him with a moiety of the expenses, disbursements and purchase-money, because the defendant had the ship registered in his own name as sole owner, and made oath to such sole ownership before the collector, and he is, therefore, estopped to set up a fraud upon the registry act, to sustain his claim. But it is to be considered, that the title set up in Mr. Silas Penniman is a merely equitable title; and the sole legal title was, by the agreement of the parties, to remain in the defendant. The oath required by the registry act of 1792, c. 1, § 4, to be taken by the owner, respects only the legal ownership of the property; and does not require a disclosure of any equitable interests vested in the citizens of the United States; but only a denial, that any subject or citizen of any foreign prince or state, is directly or indirectly interested by way of trust, confidence, or otherwise in the ship, or in the profits or issues thereof. It is sufficient, that the legal interest is truly stated; and if there be any equitable interest or trust in favor of any other citizen of the United States, no fraud is committed upon the law. Suppose a mortgage made of a registered ship, may not the mortgagee truly declare himself the legal owner, notwithstanding an equitable right of redemption in the mortgagor? See, as to equitable interests under the British registry act, Addis v. Baker, 1 Anstr. 222; Speldt v. Lechmere, 13 Ves. 588; Ex parte Houghton, 17 Ves. 252; Camden v. Anderson, 5 Term. R. 709.

There is another point in this case, which has been urged by the defendant's counsel, viz. that the instrument sued on is not negotiable, and that, therefore, the plaintiff is not entitled to recover, even if the set-off or deductions claimed by the defendant cannot be sustained. It is certainly true, that the instrument is not negotiable, and therefore it cannot be declared on as such. But by his acceptance the defendant undertook to hold the proceeds, after deducting his own demands, for the account of such person as should, by the endorsement or order of Mr. Amos Penniman on the draft, entitle himself to the proceeds. The plaintiff is the regular endorsee or appointee of Mr. Amos Penniman; and after notice of this fact, the defendant must be considered as holding the money for his use; and under such circumstances the law will imply a promise to pay the same over to him. The money counts are therefore fully sustained, if the set-off does not absorb the whole proceeds. The cases of Fenner v. Meares, 2 W. Bl. 1269, and Innes v. Dunlop, 8 Term R. 595, are strongly in point.