Brokenbrough, J.
First as to the case of The Bank of the U. States against Jackson’s administratrix: the only question I deem it necessary to discuss at any *226 length, is that arising from the two general counts of ^ declaration, and the finding of the jury. Do the probata agree with the allegata of those two counts ? Does the special verdict support them ?
It is obvious, that the allegation in both those counts, sets f01-[h a debt due from the defendant himself, and a , . promise founded on that debt. Tne charge m the first, is a very different one from that of some other person’s having had and received the money to the use of the plaintiffs, though obtained on the credit of the defendant ; and in the second, it is very different from the charge of the money being lent and advanced, not to the defendant himself, but to a third person at the defendant’s request and on his credit.
The researches of the counsel have not pointed out a single case or authority sanctioning the doctrine, that the general counts in assumpsit may be supported against a defendant who has not received the money in some shape or other, which he is charged with having received, or against one for money lent to him, or paid and expended for his use, where it was lent, or paid, to a third person on his credit.
“ Money lent” (says Chitty) “ to the defendant himself, may be recovered under the common count for money lent, though delivered to another person at his request ; but if money be lent to a third person at the defendant’s request, and both be liable to repay the money, the one on the loan, and the other in respect of his collateral engagement, which must be in writing, the count against the latter must be special.” 1 Chitt. Plead. 340. This proposition is supported by Butcher v. Andrews, 1 Salk. 23. in which it is said, “the money being lent to J. S. the defendant cannot be obliged as for a debt, and liable to an indebitatus, but to a special assumpsit, as being but collaterally bound by the promise ; for the same money cannot be lent to two. Otherwise, had the money been only delivered to the son at the father’s *227 request, or only had and received by the son at the father’s request; for then the loan had been to the father, See also Marriot v. Lester, 2 Wils. 141.1 Wms. Saund. 211. note 2.
There has been much discussion in the books, on the question whether indebitatus assumpsit would lie for monoy had and received, for money lent, or for money paid, against the drawer or acceptor of a bill of exchange, or against the maker or indorser of a promissory note. So far back as the case of Wood v. Luttrell, 1 Call 232. a question arose in this court, whether the indorsee of a bill of exchange could recover against the indorser on the general counts in assumpsit; but the decision of the question was waived, because the evidence submitted would not authorize a recovery on any count. Judge Pendleton, however, said, “ that he could not forbear to mention that he did not much like this new practice of general counts, as they tend to surprise the other party, without giving him an opportunity of preparing for a. full defence.”
We have been referred by the appellants’ counsel to many authorities, but I am much mistaken if they are not all reconcileable with the proposition with which I Erst set out. In the excellent treatise of Bayley on Bills p. 244. (Boston edi. 1826) it is said, “ A bill is prima facie evidence of money lent by the payee to the drawer, and a note, of money lent by the payee to the maker, and each, consequently, of money had and received by the drawer or maker to the use of the holder, and of money paid by the holder to the use of the drawer or maker.” He further remarks, “that an acceptance is also prima facie evidence of money had and received by the acceptor to the use of the holder, and of money paid by the holder to the use of the acceptor; and an indorsement, of money lent by the Indorsee to the indorser.” The two former propositions are proved to be true by the cases of Clarke v. Martin, 2 Ld. Raym. *228 758. and Grant v. Vaughn, 3 Burr. 1516. 1525. In the • • • first case lord Holt, whilst he denied that an action could be brought on a promissory note on the custom of merchants, yet declared, that there was an easy me-namely, a general indebitatus for money lent; and ][orc{ Mansfield, in the other, said—“ I do not find it any . .. . -it where disputed, that an action on an indebitatus assumpsit generally, for money lent, might be brought on a note payable to one or order.” That the acceptance of a bill is also prima facie evidence of money had and received by the acceptor to the use of the holder, is, I think, proved by the strong cases cited by the appellants’ counsel, Le Sage v. Johnson, Forrest’s Rep. 23. Tatlock v. Harris, 3 T. R. 174. Vere v. Lewis, 3 T. R. 182. to which may be added Weston v. Penniman, 1 Mason 306. in which too the .bill was not a negotiable instrument. It may also be readily agreed, that an indorsement is prima facie evidence of money lent by the indorsee to the indorser, and that the action may be maintained by the indorsee at least against the person who indorsed to him. Bayley on Bills, 246. referring to Keesebower v. Tims, before the king’s bench, 22 Geo. 3. State Bank v. Hurd, 2 Mass. Rep. 172.
In the case of Waynam v. Bend, 1 Camp. 175. lord Ellenborough is reported to have said, that in an action of assumpsit on a promissory note payable to L. Toader or bearer, the plaintiff (who was the holder) could not recover under the money counts, as he was not an original party to the note, and there was no evidence of any value being recéived by the defendant from him. If this be a correct decision, it restricts very much the rule that an indorsee may recover under the money counts against the indorser. There is much reason, however, to doubt its correctness. It is repudiated by the supreme court of New York in the case of Pierce v. Crafts, 12 Johns. Rep. 90. where the court, after noticing that it was a nisi prius decision, remarked that it *229 contradicts several of the preceding decisions; that it . . contradicts Tatlock v. Harris, m which it was decided that an indorsee of a bill of exchange might recover against the acceptor, under the count for money had and received, upon the principle, that the giving such a bill is an agreement between all the parties to appropriate so much property, to be carried to the account of the holder of the bill; and that it contradicts Grant v. Vaughn, in which it was held, that the action for money had and received might lie in behalf of a bearer on a bill made payable to bearer, though it is very clear, that in that case the bearer was no party to the original bill. I am, therefore, of opinion, that the objections made by the supreme court of New York to the case of Waynam, v. Bend are well founded. The maker of a note, whether payable to bearer or to order, if appearing to be made for value received, must be presumed, till the contrary appears, to have received that value, which constitutes it a debt due from him to any person to whom it may come, in the fair course of trade. By our statute, bills or notes payable to bearer, cannot be made and passed by any individuals; but notes, bonds and bills may be assigned, and by an act passed since the decision in Dunlop v. Harris, 5 Call 16. an assignee may maintain an action against a remote as well as an immediate assignor. If the obligee of a bond, or payee of a note, assigns or indorses it to another person, it is presumed, that the assignor or indorser has received value for it from his immediate assignee or indorsee; and when he becomes the assignor or indorser in his turn, the presumption is, that he has received value from his assignee or indorsee. Although the last assignee, or the holder, has not paid any thing to the obligee or payee, yet he has received the value from the intermediate party, and therefore may fairly be said to have received it to the use of that person who is entitled to the instrument.
*230 However, though I am of opinion, that the case of Waynam v. Bend was not well decided, and that the indorsee of a note may maintain indebitatus assumpsit for money had and received against the payee or remote jn(]orser> yet I cannot perceive, that the doctrine has anf applicati°n to the present case. We must, on the present occasion, not only inquire into the presumptions arising from the making and indorsements of the note, but we must also attend to the facts found. The special verdict states, that the note was presented for discount to the plaintiffs, and was discounted by them for the accommodation of Richard Cutts, the maker thereof; that Jackson the defendant indorsed the note for the accommodation of the said Richard Cutts; and that no part of the avails or proceeds. of the note came to the hands of or was received by Jackson. It farther states, that the indorsement of the note by Jackson was in blank, and was the first indorsement, and that afterwards said note was indorsed by Charles Cutts,. and then delivered to the plaintiffs for, disepunt. Although then the note imports on, its face, that money was lent by Jackson to Richard Cutts, and the first indorsement imports that money was lent by Charles Cutis to Jackson, and the last indorsement, that money was lent by the plaintiffs to Charles Cutts; yet all these presumptions are done away by the facts found. No money was lent by Jackson to Richard. Cutts, nor by Charles Cutts to Jackson, nor - by the bank to Charles Cutts: but, by the consent and contract of all these parties, the note was discounted, and the money lent by the plaintiffs to the maker of the note on his direct responsibility, and the collateral responsibility of the indorsers. The parties contracted through the medium of a note made negotiable and payable at bank. Viewing it as a strictly commercial paper, the liability of Jackson became complete, when, on a failure of the maker to pay it at maturity, it was regularly protested, and notice thereof regularly given to the' in *231 dorsers. If we do not consider it in our courts as a . . . strictly commercial paper, on the ground that it was not made negotiable by our statutes, the liability of Jackson depended on a suit being brought against the maker, and due diligence used in the prosecution thereof, and a failure to recover the money by execution; or, on the notorious insolvency of the maker, which would dispense with the suit. In whatever way we view it, still the responsibility of the indorser was not direct, but collateral. The loan was not made to him, nor the money received by him; but it was lent to and received by a third person, in part on his credit. He was therefore liable, in the language of the case cited from Salkeld, “ not to an indebitatus, but to a special assumpsit." The counsel for the appellants admitted, that if the case decided by the supreme court of the U. States, of Page v. The Bank of Alexandria, 7 Wheat. 35. be law, the general counts would not lie in this case. The full examination which this case has undergone, both at the bar and in our conferences, convinces me, that that case was correctly decided.
It was admitted, and indeed it seems clear, that the special counts in this declaration are not supported by the proofs. I am for affirming the judgment.
Then, as to the case of The Bank of the Metropolis against Jackson's administratrix; the only difference between it and the other, is, that the special verdict, after finding the execution of the note by Richard Cutís, also finds that Jackson, the payee, wrote at the foot of the note the words “ credit the drawer,” signed his name thereto, and then indorsed the note in blank. I do not think that this varies the case. It rather tends to confirm the other finding of the jury. It seems to be equivalent to a declaration by Jackson, that he is not to have credit for the proceeds of the note, and, consequently, not to have the right to receive them; but that the maker is to have credit for the money, and to check *232 for it. I think that this judgment should likewise be , affirmed.
Carr, J.
In Israel v. Douglass, 1 H. Blacks. 241. lord Loughborough, says, “ Where a party has not the su^stantial justice of the case on his side, the court will not favour any action he may bring: but where justice is clearly with him, they will, if possible, allow him to maintain the action he has brought, because the only effect of a refusal would be to make him adopt another form of action.” Feeling strongly the correctness of this sentiment, and believing that the justice of the case is clearly with the plaintiffs in these actions, I have struggled hard to convince myself, that we ought to suffer them to maintain their actions, rather than put them to begin this ten years siege anew. But the opinions of my brethren, with the host of authorities and arguments arrayed in their support, have been too powerful for resistance; and I am obliged to say, that it seems better that these parties should suffer by the mistakes of their counsel, than that we should, to save them, break down the settled and established rules of pleading.
The four special counts were given up on all hands to be either bad on demurrer, or not sustained by the facts found in the special verdict; and the only point of serious discussion at the bar, was, whether those facts would support the general counts, for money lent, and money had and received. 1 must say, that, judging by the light of authority, they do not. The note was made by Richard Cults payable to Jackson, indorsed first by Jackson, and then by Charles Cutts, and discounted by the bank. Jackson, then, occupies the position of a remote, notan immediate indorser. It seems admitted, that the prima facie evidence of a loan or advance of money, resulting from the indorsement, would, unless destroyed by opposing testimony, support indebitatus *233 assumpsit by the indorsee against his immediate indorL J ° . ser; and the cases seem to extend it to remote indorsers. As to this, I do not undertake to give a positive opinion ; for, whether it be so or not, it cannot influence the decision of tliis case. The special verdict has found, that the note was indorsed, and discounted, for the accommodation of Richard Cults alone, no part of the money coming to the hands of Jackson. This destroys the presumption of loan or advance arising from the indorsement, and leaves the money counts wholly unsupported. I refer, for the positions here taken, to cases cited by my brethren, which 1 have carefully examined.
This opinion applies equally to the case of The Bank of the Metropolis against Jackson’s administratrix, as I cannot think, that the words “credit the drawer” make any difference.
Cabell, J.
I entertain no doubt, that on the facts found by the special verdict, Jackson became liable to the bank, and that that liability would have been enforced in this suit, if it had been asserted by a good declaration suited to the case.
The declaration contains four speciaL counts on the note, and two general counts, for money lent and money had and received. All the special counts on the note are either dearly bad on demurrer, or are unsupported by the facts of the case as found by the jury. They were properly abandoned by the counsel for the appellants. The genera] counts are in themselves free from objection, but the question is whether they will avail the bank on the case stated by the special verdict ?
I am entirely satisfied, after an examination of the authorities, that general indebitatus assumpsit for money lent, paid and advanced, or had and received, will lie for an indorsee against the indorser of a promissory note, and that the mere indorsement is prima facie evi *234 dence, that the money was lent, or paid and advanced, ** ^ by the plaintiff to or for the defendant, or that the money was had and received by the defendant to the use of the plaintiff, and that this prima facie evidence carries with it such presumption of the fact, as will entitle P^a'nt^ t0 recc)Ver? unless it shall be rebutted by other proper testimony. These propositions will not be controverted, as between an indorsee and his immediate indorser. I conceive they are equally true, as between an indorsee and a remote indorser. In Grant v. Vaughn, 3 Burr. 1516. the bearer of a note payable “ to ship Foo-tune or bearer,” brought an action On it, and inserted a count for money had and received. Lord Mansfield said—“Upon the count for money had and received, the case is clear beyond dispute; for undoubtedly an action for money had and received to the plaintiff’s use, may be brought by the bona fide bearer of a note payable to bearer. There is no case to the contrary. It was certainly money received for the original advancer of it, and if so, it is for the use of the person who has the note as bearer.” I do not think it possible to distinguish that case, in principle, from the case of an action by an indorsee against a remote indorser. For the money was received by the remote indorser for the use of his immediate indorsee, who paid it to him; and if so, it is for the use of any person into whose hands the note may subsequently come, by indorsement from that indorsee.
But although an indorsement is prima facie evidence as aforesaid, yet it results from the very nature of prima facie evidence, that all the presumptions arising from it may be rebutted and destroyed by other testimony. Thus it may be, that the defendant indorsed the note without any consideration, solely for the benefit and accommodation of his indorsee; or it may be, that the defendant indorsed the note as a mere security for a precedent debt due from the maker to the indorsee, or for *235 money to be lent by the indorsee to the maker of the J , . noto: and if these facts be proved, the presumptions which would otherwise have arisen from the indorsement, are entirely done away; and the counts for money lent, money paid, or money had and received, are left without support; for it cannot be said with truth, in such a case, that any money was lent or paid to, or received by, the defendant.
These principles are decisive of the case before us. For it is expressly found by the jury, that the note was indorsed by Jackson and discounted by the bank for the accommodation of the maker, and that Jackson received no part of the proceeds. The case of Page v. The Bank of Alexandria, 7 Wheat. 35. is precisely in point.
The case of Th.e Bank of the Metropolis against Jackson's administratrix cannot be distinguished from that of The Bank of the U. States. It is true, Jackson made a memorandum at the foot of the note, directing that the drawer should have credit for the avails of it: but that can make no difference. Jt is only evidence of what is expressly found by the jury, that the note was indorsed by Jackson, and discounted by the bank, for the accommodation of the maker.
I am of opinion, that the judgments in both cases should be affirmed.
Tucker, P.
I assent to the proposition advanced in argument by the counsel of the bank of the U. Stales, that the note in this case, being mere accommodation paper, was never an available negotiable note until it was discounted by the bank. This is so well established by the case of Whitworth v. Adams, 5 Rand. 332. that it is unnecessary to do more than refer to that case for the support of the proposition. Considering the transaction, then, in this light, let us inquire what is to be regarded as the character of the contract between the parties.
*236 . The act incorporating the bank of the U. States not having placed notes discounted by it upon the footing 0f bills of exchange, it has been attempted to bring this case within the influence of the doctrines of the Virginia law, as to the assignment of bonds. But it is ob-v-[ous ¡;0 me ft cannot be so considered. An assignment implies a subsisting debt, transferred from the obligee to the assignee, for a valuable consideration. It implies an engagement on the part of the assignee, to sue the obligor, and to use due diligence for the recovery of the debt: and it also implies an engagement on the part of the assignor, to refund what he has received, if the money cannot be recovered. In this case, there was no subsisting debt to assign: there was no assignment by Jackson to Charles Cutts, nor value received by Jackson from Charles Cutts, or by Richard Cutts from Jackson; nor did any money or value pass in the transaction at all, until it was advanced to Richard Cutts by the bank on discounting the note. Still less was there an engagement to refund money received on the supposed assignment, for no such liability was contemplated. In short, the case has not a single feature of the ordinary case of the assignment of a subsisting bond or note; and the law, therefore, which applies to such assignments cannot be brought to bear upon it. “ In Virginia,” says chief justice Marshall, “ the indorser is liable under the implied contract, by the gene?'al U7idersta?iding of the country, which is that he will pay the note, if by due diligence it cannot be obtained from the maker. This condition was not expressed, but it was just, because it was consistent with general usage, and therefore was the real understanding with which such an indorsement was made and received. But in banks, this is probably not the usage, and therefore the same reason does not exist for annexing such a condition to the contract created by indorsement.” In this case, the transaction was with a bank, and there is nothing in it from which *237 even the most acute could infer, that the parties de- , signed to place this paper on the tooting oi an assigned bond, or that it was the real understanding with which the indorsement wa.s made by the one party, or received by the other.
How, then, is the contract to be considered ? This, after all, is the real question in the case. The court sits for the purpose of enforcing the agreements of parties according to their true intent and meaning, whatever may be the form giyen to such contracts. “ If,” continues the chief justice, “banks are understood to receive notes made negotiable with them, as subject to the law which governs inland bills of exchange, then it would seem reasonable, in the case of notes actually negotiated with them, to imply from the act of indorsement an undertaking conformable to that usage. If the case then shewed, that such was the usage of the bank, and such the understanding under which notes were discounted, this court is not prepared to say, that the undertaking created by the indorsement would not be so fashioned as to give effect to the real intention of the parties.” These opinions seem to me to be founded in good sense and the principles of justice. Let us, then, endeavour to get at. the real understanding of the parties in this case, and then “ fashion the undertaking so as to give effect to the real intention.”
On this subject, I think there can be little room to doubt. The verdict oí the jury has ascertained, that the note was indorsed by Jackson for the accommodation of Richard Cutts, who received the whole avails of the note, no part of which came to the hands of Jackson. This finding discloses to us the whole character of the transaction, unless we wilfully shut our eyes to what every body else can see, and close our understanding to facts which every intelligent man in the community must know. I should doubt whether it bo even necessary to find, specially, that banks discounting paper of *238 this description, receive it as subject to the law which *■* governs inland bills of exchange, and not as subject to the law which governs the assignment of bonds and notes under the statutes of this commonwealth. That |g a matterj which I had apprehended was as well un^erstood as any other part of the commercial transactions of the country, even as the principles which govern the negotiation of bills of exchange themselves: and I should have found little difficulty in my own mind, in saying at once, that the parties intended to bind themselves as in the case of inland bills; and though they cannot change the law by contracting for the remedy, there is nothing to control their contracting for the responsibilities of drawers and indorsers of bills. The features of this transaction correspond most strictly with those of inland bills negotiated in our banks. Jackson indorsed the paper for R. Cutts’s accommodation,— to enable him, on the credit of his name, to get a discount at the bank of the U. States. By this indorsement, he intended to make himself responsible for the debt. He did make himself thereby responsible. Russell v. Langstaffe, Doug. 514. Violet v. Patton, 5 Cranch 142. 4 Mass. Rep. 45. 2 Wash. 164. The only question remains,—in what manner and on what terms was he to be responsible ? We have already seen, that the responsibility could not be that which arises in the case of assignment of subsisting debts, as there is no one feature of such assignment here. We must, therefore, consider him either in the light of a principal bound at all events, whether R. Cutts, the drawer, was solvent or insolvent, and whether the due demand had been made of him or not; or we must look upon him merely as a guarantor of the note, in like manner as the indorser of an inland bill of exchange. I do not think the former could have been “the real understanding and intention of the parties.” We cannot wink so hard as not to see that such indorsement is neither made nor *239 received, in any other light than as a collateral under- ** taking on the part of the indorsers, to be responsible in succession (4 Rand. 553. 562.) for the amount of the note, in ease it could not be obtained upon due demand from the maker. In this light, at least, it clearly appears to my mind.
In this case, however, it will be unnecessary, if I am right upon another point, to take upon us to decide upon the character of this contract, and its analogy to bills of exchange. I am satisfied the judgment must be affirmed, and the plaintiffs turned around to a new action: and if the action be renewed, a special finding may be introduced as to the usages of the bank, which will leave no doubt about the light in which the transaction is to be viewed.
The four special counts I understood to be abandoned, and very properly, for they are either defective in themselves, or do not fit the facts found by the verdict. Had the pleader been content to set forth those facts simply as they occurred, he could not have failed to draw a good declaration. But in attempting to mould the transaction into a technical form, he has unfortunately altogether.failed. It remains, then, only to inquire, whether the action can be sustained on the general counts. I am sorry to say, 1 think it cannot. Wo principle is better established, or upon a sounder foundation, than this—“ that he who is chargeable upon a collateral undertaking, and not for his own debt, must be sued upon his special contract.” 1 Chitt. Plead. 339. Indebitatus assumpsit does not lie against him, for he is not indebted, though he has made himself liable. He is responsible only upon his express engagement, and not upon an implied contract. That express engagement must be shewn to be complied with on the part of his adversary; and if he cannot be rendered liable upon the special counts because of a defect in the plaintiff's case, the plaintiff will not be allowed to go into evi *240 dence on the money counts. Long v. Moore, 3 Esp. Rep. 155. in note. Chitt. on Bills 206. in note. This is in perfect consistency with the established principles in analogous cases, which refuse to the party leave to proceed on the general counts, where a special agreement is proVed, but different from that declared on.
. It is unnecessary to bestow any separate attention on the case of The Bank of the Metropolis against Jackson's administratrix.
Both judgments are to be affirmed»
Judgments affirmed.