## IN ADMIRALTY.

## G. B. POST *vs.* AMERICAN SCHOONER "LADY JANE."

The registry of a ship is entitled to very little weight as evidence of ownership, and so far from being conclusive, is merely *prima facie* evidence.

When testimony had been taken by a commission, under letters rogatory addressed to a U. S. District Court in California, it was received, although it did not appear that the testimony had been taken under a special order from the court to whom the letters rogatory were sent.

CHIEF JUSTICE LEE, in delivering his opinion stated as follows:

This is an action brought to recover possession of the American schooner "Lady Jane."

The libellant sets forth in his petition, that on the 24th day of September last, Mary Kashow, of San Francisco, California, obtained a decree of divorce against Israel Kashow, in the District Court of the fourth Judicial District of California, and also a further decree that there should be a division of the common property of the said Israel and Mary Kashow: that on or about the 12th day of December last, the said libellant was duly appointed receiver of all the personal property belonging to the said Israel Kashow: that on or about the 13th day of December, 1854, he took into his possession and custody the schooner "Lady Jane," the property of the said Israel Kashow, then lying in the port of San Francisco, and held the same subject to the order of said court. The libellant further alleges, that as receiver aforesaid, he appointed D. P. Penhallow, master of the said vessel, with instructions to take her to Honolulu, and on his arrival to deliver her into the custody of R. Coady & Co., his duly constituted agents: that on the said 13th day of December the said Penhallow, having accepted the command of the vessel, she sailed with passengers and cargo for Honolulu, where she arrived on the 29th day of December, 1854, and was delivered into the possession and custody of R. Coady & Co., agents of the libellant, who appointed William Lee Hays master of the vessel, he having been duly authorized by the libellant to take the command of her, on her arrival at Honolulu, and that the said Hays was duly entered on the register of the vessel as her master, by the American Consul at this port.

And he further alleges that the said Hays proceeded on board and took command of the vessel; and that subsequently the American Consul, at the request of Israel Kashow, also entered the name of Charles H. T. Hunter on the register of the vessel, as master thereof, when the said Hunter also proceeded on board of the vessel and assumed command of the same; that both Hunter and Hays claim to be in possession of the vessel; and further alleging that the entire possession and control of the vessel is wrongfully withheld from him, prays this court to decree the possession of the schooner to be delivered to him, and also for damages resulting to him from such wrongful interference and detention.

The claimant Kashow answers that he has no knowledge of the decree of divorce set forth in the libellant's petition, and that the vessel is registered in the name of one Elisha Bloomer, of New York, whom he believes to be the legal owner of the same: that he hired the vessel of the said Bloomer for the sum of three hundred dollars per annum, and, as such hirer, is legally entitled to the possession of the same. He further alleges that he has no knowledge of the appointment of G. B. Post the libellant as receiver aforesaid.

The first question for the court to determine is, who is the owner of this vessel? Is it Israel Kashow, or Elisha Bloomer? It is contended by Kashow that the register is the legal and proper evidence of ownership, behind which we cannot go, and that by the said register, Bloomer appears to be the owner, and must be considered as such. Now, what is the law on this subject? It appears to be a well established doctrine that the registry of a ship is entitled to very little weight as evidence of ownership, and so far from being conclusive, is merely *prima facie* evidence. Professor Greenleaf, in his valuable treatise on Evidence, (1 Greenleaf's Evid. § 494) says, "Where the question of ownership is merely incidental, the register alone has been deemed sufficient *prima facie* evidence. But in favor of the person claiming as owner, it is no evidence at all, being nothing more than his own declaration."

(See also 3 Kent's Commentaries, 149 and 150. Weston *vs.* Penniman, 1 Mason, 306 and 318. Tinker *vs.* Walpole, 14 East. 226.)

A vessel may be, and often is, registered in the name of a person who has not a farthing's interest in her, while the equitable title and real ownership is in another person, and where there is proof of the ownership being in some other party, the register, unless auxiliary proof is brought in aid of the same, will avail but little. Now, has such auxiliary proof been furnished in this case ? Most clearly not. There is not a particle of evidence on this point aside from the naked register, and is it reasonable to suppose, that if Bloomer was the real, *bona fide* owner of this valuable vessel, he would have hired her to Kashow for the small sum of three hundred dollars per annum? It appears by the evidence of the master who sailed the ship from New York to Honolulu, and others, that Kashow frequently declared himself to be the owner of the schooner " Lady Jane," and that he has acted as such from the time he built her up to December last when this dispute arose. It further appears that while he invariably represented himself as the owner of the " Lady Jane," he repeatedly stated that he had caused her to be registered in the name of Elisha Bloomer, because he was afraid if she stood in his own name she

would be taken away from him at the suit of Mary Kashow.    Leaving the California evidence out of the question, I am convinced that Kashow is the real and equitable owner of the schooner "Lady Jane."

We now come to the question, whether Mary Kashow has obtained a decree of divorce against Israel Kashow, and also a decree for the division of their common property, and finally, whether the libellant was appointed receiver of said property, had this vessel in his possession as such, and sent her to the Islands while in his custody. And here let us pause a moment to consider certain objections interposeId by the learned counsel, against receiving the evidence upon whic h the libellant seeks to establish the affirmative of these questions.    It has been urged with much force, and argued with unusual lega acumen and ability by the learned counsel, that the depositions and other evidence taken in California have not been taken in the manner intended by the court, or in compliance with the letters rogatory issued in this cause.    It is contended that, instead of being taken by an Admiralty Court, as directed in the letters, it was taken before a commissioner, and that it does not appear that said commissioner acted by the order or under the direction of any Court of Admiralty. To these objections it is answered by the learned counsel for the libellant that these exceptions if taken at all, should have been taken before the evidence was read to the court, and that not having been so taken, the counsel for the claimant has waived his right to interpose them.    Were we to confine the parties to the technical rules of practice, we should think the objections well taken, notwithstanding the counsel failed to interpose them until after the reading of the depositions.    But we do not, and ought not, to stand upon such rules, when there is no evidence of fraud or wrong intention, in the manner of executing the letters rogatory, and taking the evidence under them. It appears that the commissioner who took these depositions is authorized to take depositions to be read in any court of the United States, and to do all other acts and things that the Judge of the District Court, in California, could do at chambers, and therefore, it is not clear that it was necessary for the commissioner to have a special order of the court to take evidence under letters rogatory.    I am convinced that the evidence, though somewhat informal, has been taken in good faith, and while it is not entitled to the fullest credit, or entirely conclusive in this matter, yet, when taken in connection with the testimony given at Honolulu, it is sufficient to satisfy me that there was a decree for the division of the property; that the libellant was appointed receiver, and that the vessel was sent to Honolulu while in his possession and under his control.    I am therefore of the opinion that the libellant, as such receiver, is entitled to the possession of the vessel at the present time.

The only matter remaining to be determined is, whether the libellant is entitled to any damages for the detention of the vessel at Honolulu.    I think he is not.    The vessel, at the time she was sent to San Francisco, was under the command of a person appointed by Kashow, and was consigned to the libellant as the agent of the owner. On the return of the vessel to Honolulu, Kashow, naturally indignant at the steps which had been taken to deprive him of his vessel, and feeling that his agents had betrayed his trust and confidence,

took immediate steps to regain possession, and in part succeeded. There was no good and satisfactory evidence shown to him of the appointment of the libellant as receiver, and, under all the circumstances of the case, I think he was justified in taking and holding possession of the vessel, until the question was determined by this court.

Let decree be entered in favor of the libellant for the possession of the vessel, and let the costs be equally divided between the parties.

Mr. Bates and Mr. Griswold for libellant.

Mr. Blair for Kashow and Hunter.