## Case No. 12,566.

### SCUDDER v. CALAIS STEAMBOAT CO.

[20 Law Rep. 498.]

Circuit Court, D. Maine. April Term, 1857.

SHIPPING — REGISTER — EQUITABLE TITLE — PRACTICE IN EQUITY—PARTIES.

1. The registry acts of the United States do not require a disclosure of the equitable title of the vessel registered or enrolled, unless that title is in the subject of a foreign state.

2. Where an agent is employed to procure a vessel to be built in his own name, and to transfer the title eventually to his employer, and he fraudulently transfers the title to a stranger, with notice, the transaction creates a trust properly cognizable in equity.

3. In a suit in equity to enforce such a trust, all the equitable owners should be joined as parties, but if one is out of the jurisdiction and will not join in the suit, the court has power to proceed in his absence.

[This was a bill in equity by Charles Scudder, administrator of John Van Pelt, against the Calais Steamboat Company.]

CURTIS, Circuit Justice. This case has been argued in writing during the vacation on a demurrer to the bill. The material allegations of the bill are, that the plaintiff's intestate, residing in California, employed one William W. Vanderbilt, to act as his agent in procuring a steamboat to be built in the city of New York. That Vanderbilt was originally instructed to contract for the building of the boat in his own name, and have it enrolled in his own name when completed, and send it to California, when the entire title was to be transferred to the intestate, unless it should be agreed that Vanderbilt might become owner of two undivided twentieth parts thereof. That subsequently these instructions were so far changed as to direct Vanderbilt to have the boat enrolled in the names of four other persons besides himself, as owners of certain specified parts, respectively. That afterwards the deceased agreed with one Richard Cheenery, that he should own seven twentieths of the boat, and the deceased was to own the residue. That Cheenery and the deceased, and his representatives in California after his decease, furnished respectively thirteen twentieths, and seven twentieths of the moneys expended in building the boat. That one Vail was employed, either by the intestate alone or by him in conjunction with Cheenery, to go to New York, take charge of the boat, fit out and navigate her to California. That Vail and Vanderbilt, combining together, took the builder's certificate in the name of Vanderbilt, obtained an enrollment in his name as sole owner, and, in fraud of the intestate, sold the boat to an agent of the defendants, who had notice of the intestate's rights; and the defendants' agent afterwards transferred the title to the defendants.

The principal ground taken in support of the demurrer is, that the employment of Vanderbilt to have this boat built and enrolled in his name as the sole owner, or in the names

of himself and three other persons, as owners, when in truth the intestate alone, or he and Cheenery, were the owners, was an attempt to commit a fraud on the registry acts of the United States; and that this purpose so taints the whole transaction that a court of equity will not aid the administrator to vindicate rights of the intestate growing out of such a contract. But this objection is founded on a misapprehension of the effect of the registry acts. By the act of February 18, 1793, § 2 [1 Stat. 305], the same proceedings are to be had in enrolling as in registering vessels. The act of December 31, 1792, § 4 [1 Stat. 289], requires the owner applying for a register to make oath that he is the sole owner of the vessel, or an owner jointly with others, whom he names, and that he or they are citizens of the United States, and that there is no subject of any foreign state, directly, or indirectly, by way of trust or confidence, or otherwise, interested in such vessel or the profits thereof. The act of July 29, 1850, § 5 [9 Stat. 441], has changed this only so far as to require the particular proportions owned by each person to be specified. But there is nothing in either of these acts which prevents the legal title from being in one person while the equitable title is in another, or which requires a disclosure of the equitable title unless its owner be a subject of a foreign state. The ownership referred to in the oath is a legal, in contradistinction to an equitable ownership. This was so held by this court, in Weston v. Penniman [Case No. 17,455]. I am not aware that the correctness of this decision has been doubted; and it is matter of every-day practice for vessels to be held in trust for citizens of the United States not named in the register or enrollment. Upon this ground the demurrer cannot stand.

Another ground is, that there is a plain, adequate, and complete remedy at law, and so no jurisdiction in equity. But the employment of Vanderbilt to go to New York, contract for building a boat, and take the title in his own name, and pay for it out of the funds of the intestate, and then transfer the title to the intestate, or such person or persons as he might appoint, created a trust; and the subsequent fraudulent violation of that trust by selling and conveying the boat to a third person, who purchased with notice of the fraud, makes a clear case for the interposition of a court of equity. It is true the bill avers that the defendants got no legal title, or if they did it was affected with notice of the complainant's equity. But, besides being in the alternative, this allegation is merely a conclusion of law drawn by the pleader from the substantive facts stated; and these facts show that the last alternative is the correct one, and that the defendants did get a legal title charged with the same trust as existed while Vanderbilt held that title.

It is further objected that Cheenery, the other part owner, should have been joined as a party, or some excuse for not joining him assigned in the bill. To this it is answered that it does not appear by the bill that Cheenery was defrauded; and that, non constat but his equitable title was properly sold by Vail, who professed to be his agent for that purpose. But the difficulty is, that it is not distinctly averred whether it was or was not rightfully sold. This is a bill for an account, and for the transfer of title to thirteen twentieths of the boat. If Vail was jointly employed by the intestate and Cheenery, to take possession of the boat, and colluded with Vanderbilt to defraud both his employers by a sale to a third person, and such sale was made, I think Cheenery should be a party to a bill to set aside the sale, and for an account. Brookes v. Burt, 1 Beav. 106. And the bill should either explicitly aver that Cheenery is no longer a tenant in common with the complainant, because his equitable interest was extinguished, or he should join, as a party complainant, or, if he refuses, he should be joined as a party defendant, or his absence from the jurisdiction should be averred. In the latter case, I think, the court may proceed in his absence; for though he is a necessary party, he is not an indispensable party under the act of February 28, 1839 (5 Stat. 321). Shields v. Barrows, 17 How. [58 U. S.] 130.

Upon this last ground the demurrer must be sustained, with leave to amend the bill.

[NOTE. Subsequently there was a hearing upon the amended bill. A decree was entered for complainant, with an order of reference. Case No. 12,365. An appeal from that decree was taken to the supreme court, where the decree was reversed. 2 Black (67 U. S.) 372.]