MORRIS PALEFSKY *vs.* MATTHIAS F. CONNOR.

Middlesex.    January 7, 1930. — February 25, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Contract,* Validity, Performance and breach, Building contract. *Practice, Civil,* Requests, rulings and instructions. *Waiver.*

A contract by a plasterer with the owner and builder of an apartment house to do the plastering in the house is not made illegal or unenforceable by the owner by reason of the facts that, in procuring his permit to build from the municipal authorities, the owner did not comply with a requirement of an ordinance that he should file specifications with the building inspector and that the inspector granted him a permit in accordance with the application and plans filed with him.

At the trial of an action by the owner against the plasterer upon the contract above described, it appeared that the contract required the defendant to plaster with "hard plaster." There was evidence that the mixture for hard plaster should be two of sand to one of plaster; that the mixture applied by the defendant was three of sand and one of gypsum; that the latter was not a good mixture as it weakened the adhesive and cohesive qualities of the plaster; that, due to that as a primary cause, the plaster became loose, bulged, separated from the laths and fell; that the lathing in the building was not done by the defendant; that the spacing of the laths for hard plaster should have been from one fourth to three eighths of an inch; that all the laths in the building were not so spaced but ran from one sixteenth to five eighths of an inch; that it was not a uniformly good job of lathing, and that that fact was a secondary or contributing cause of the plaster being loose, bulging, separating from the laths and falling down. A motion that a verdict be ordered for the defendant was denied and there was a verdict for the plaintiff. *Held,* that

(1) It was proper for the judge to instruct the jury in substance that the defendant, having proceeded to carry out the contract with the laths laid as he found them, was under an obligation to do what the conditions required in order to perform the work in a good and

workmanlike manner; and that if the conditions required him to use a different mixture or to apply more force in putting the plaster on in order to get a proper clinch, it was his duty to furnish such plaster and to place it upon the laths with sufficient force to make a good and workmanlike job;

(2) The motion that a verdict be ordered for the defendant properly was denied;

(3) The judge properly refused to instruct the jury that, if they found upon all the evidence that the lathing was improper and such improper lathing contributed to the fall of the plaster, the plaintiff was not entitled to recover: the question for the jury was whether, in view of the character and condition of the laths and their insufficient spacing, the plastering was done in a workmanlike manner as called for by the contract.

CONTRACT. Writ dated January 18, 1926.

The action was referred to an auditor and afterwards was tried in the Superior Court before *F. T. Hammond*, J. Material facts found by the auditor, other evidence at the trial and rulings asked for by the defendant and refused by the judge are described in the opinion. Portions of the charge to the jury to which the defendant saved exceptions were as follows:

"The . . . defendant, further answering says that the contract referred to in the plaintiff's declaration was an illegal contract, and was not enforceable at law. There is no evidence here in this case that this contract was illegal or nonenforceable at law, so that you will pay no attention to that part of the claim.

"And further answering the defendant says that the plaintiff's violation of the law contributed to cause the damages complained of in his declaration and that the building was erected by the plaintiff contrary to the provisions of law and in an improper and illegal manner; that the construction of the building by the plaintiff in such manner brought about and caused the injuries complained of in the plaintiff's declaration. Now there is no evidence in this case, and I instruct you accordingly, that there was any violation of law on the part of Palefsky which contributed to the fall of these ceilings. If there was a failure to file specifications, that did not have anything to do with the ceilings. It had no connection at all, so that you can put that aside in your deliberations. I think

in respect to the floor timbers, instead of being two by nine they were two by eight, and some evidence, I think, that the city ordinance required them to be two by nine, but there is no evidence here that the fact that they were two by eight instead of two by nine had anything to do with the fall of the ceilings. There is no question of fact for a jury in regard to that. I do not now recall that there was any other claim of violation of the ordinance.

"Parenthetically, and while I think of it, there has been a good deal said here, both in the testimony and in the arguments of counsel, about whether Connor advised or did not advise the use of hard plaster on wooden laths. That has no bearing legally on this case at all. Whether he said it was a good thing to use hard plaster on wooden laths or not is of no consequence. This is an action for breach of a contract, and there is no question but that he made a contract to put hard plaster on wooden laths. If he did not do it in a proper way, then the plaintiff has a grievance and has a right to recover. If he did it the proper way, then the plaintiff has not got a grievance and it would make no difference what advice he gave Mr. Palefsky as to whether it was advisable to put hard plaster on wooden laths or not, so that you can eliminate that point in your discussion about this case. It hasn't anything to do with the rights of the parties . . . .

"Now coming back to this question of the effect of what the law is applicable to this question, to a case where there is an improper spacing in the laths. I have to assume, and I am instructing you that you may take one view or the other. Assuming that you find that the laths were properly spaced, then what I say goes for nothing, but assuming you find, as the auditor has found here, that the primary cause was an improper mixture of sand and gypsum, and that the secondary or contributing causes were the improper spacing of the laths, and the application of this plaster to such laths with but the ordinary or usual force required where the mixture is a proper one, and the laths properly spaced, — assuming that you come to that conclusion, then what is the law about it? What was the obligation of the parties? There is no written contract here. The parties, as far as it appears,

made a word of mouth contract. The defendant agreed to do the plastering in those apartments. That contract was made before any lathing was put up at all, and of course under those circumstances could not be made with reference to any particular way in which the lathing had been put up because it had not been put up at the time the contract was made. And, therefore, as Connor's contract had nothing to do with the lathing, he had a right to have a proper lathing surface. He had a right to have the work of lathing properly done as a condition attending the performance of his work. He could not be asked, he could not be compelled, and he could not be required to go ahead plastering a house which had not been properly lathed. It was an implied condition of his contract that the plaintiff, before he required him to go to work on the plastering, should furnish him with a properly lathed house; that is to say, with a house lathed so that in the ordinary way, using the ordinary material and the ordinary amount of force, a good key, or clinch would be obtained.

"Now what is the effect if the lathing isn't properly done, if those conditions are not complied with? That being an implied condition, that the lathing should be properly done, that being an implied condition of Connor's obligation to go on, if the lathing was not properly done, and it was a poor job, then Connor had the right to say, 'The condition under which I am required to go on with this contract has not been fulfilled and I decline to go on with it; you have given me a house to work on where the laths are not properly spaced. I am entitled to go to work on a house where the laths were properly spaced. You can't ask me, I am not obliged to go on under those circumstances.' That was his right. He also had the right to waive that, failing to furnish him with a properly lathed house and say, 'Well, although this isn't right I will go on and finish my job and earn my money.' In the other case, if he failed to go on he would be excused from performance. He could get no damages for his breach of contract, but he had the right to say, 'I will go on and I will earn the money.' Now, if, with the full knowledge that the lathing was not properly spaced, he undertook thereafter to go on with the contract and he

waived his right to stop and his excuse for not performing further, and undertook to go on under conditions which were somewhat more hard for him to do a good job, that required a particular and different mixture, or the application of more labor, or more force, then, having chosen to go on, he would be under the obligation to do what those conditions required him to do in order to make a good job, and if they required him to use a different mixture and to use more force in order to get a clinch and a good job, if they did require that, then he would be, having chosen to go on, under an obligation to furnish whatever was necessary to make a good job out of the conditions that he actually chose to go on under."

There was a verdict for the plaintiff in the sum of $2,584.08. The defendant alleged exceptions.

*J. P. Farley*, for the defendant.

*A. S. Howard*, (*B. Silverblatt* with him,) for the plaintiff.

CROSBY, J. This is an action to recover damages for the alleged failure of the defendant to perform in accordance with its terms an oral contract entered into by the parties in January, 1925, respecting the plastering of an apartment house, in Lowell, erected and owned by the plaintiff. The declaration alleges that the agreement provided that the defendant would furnish proper materials and would do the work in a good and workmanlike manner, and that for such labor and materials the plaintiff would pay the defendant $3,475. It is the contention of the defendant that the contract was illegal and unenforceable. He further contends that the plaintiff was guilty of negligence which contributed to cause the damage sustained. After the defendant had completed the work and received full payment under the contract, many of the ceilings became loose, separated from the laths, and fell. Some of them were replaced by the defendant.

The case was referred to an auditor who made the following findings: Under the terms of the contract the defendant agreed to furnish the labor and materials to "hard plaster" the building then in the process of erection, the material to be used to be of "U. S. Red Top Gypsum." The work was started on February 1, 1925, and finished the seventh of the

following March.  The lathing of the entire building was done by a contractor other than the defendant.  The plaintiff was the general contractor and all, or nearly all, of the construction was by workmen employed by him.  The plastering in many of the rooms fell during the year 1926, and in other rooms was cracked, loose, bulging, separated from the laths and ready to fall.  All of the ceilings were replaced either by the defendant, or by one Callery, employed by the plaintiff, upon the same laths as originally spaced, and those ceilings were in good condition at the time of the hearings in April, 1928.  The auditor found that the mixture for hard plaster should be two of sand to one of plaster; that the mixture applied by the defendant was three of sand and one of gypsum; that the latter was not a good mixture as it weakened the adhesive and cohesive qualities of the plaster and was the primary cause of the plaster becoming loose, bulging, separating from the laths and falling; that the spacing of the laths for hard plaster should be from one fourth to three eighths of an inch; that all the laths in this building were not so spaced but ran from one sixteenth to five eighths of an inch; that it was not a uniformly good job of lathing, and was a secondary or contributing cause of the plaster being loose, bulging, separating from the laths and falling down.

The auditor further found that the defendant and his foreman were present when nearly all the lathing was done; that where the laths were improperly spaced was obvious; that the defendant and his foreman complained to the plaintiff and to the lather; that the defendant did not stop work but followed the lather, doing the ordinary work of plastering and using ordinary force in applying the plaster when it was plain that where there was improper spacing of laths, more than ordinary force was required to obtain a key or clinch which would hold the plaster in place.  The auditor found that the plans as originally drawn called for a flat roof but that a "pitch roof" was constructed.  He also found that in certain respects the construction was in violation of the building ordinances of the city.

The defendant contends that specifications were not filed with the building inspector as required by § 13 of the city ordinances. It appeared that the inspector granted the plaintiff's application for a permit to build in accordance with the application and plans filed with him. At the trial in the Superior Court the case was submitted to the jury upon the auditor's report, together with other evidence.

If we assume, without deciding, that specifications were not filed with the inspector of buildings before the building was erected, as required by § 13 of the city ordinance, and that the construction was in violation of the same section, the plaintiff is not for those reasons precluded from recovery. The contract between the parties was not illegal. To perform it did not violate any provision of the ordinance. *Ordway* v. *Newburyport*, 230 Mass. 306, 308. It was not open to the defendant to show that the act of the inspector in granting the permit was wrong on the ground that the provisions of the ordinances had not been complied with. His conclusions in matters of fact within his jurisdiction are conclusive in the absence of bad faith. There is no finding that the plaintiff did not act in good faith. *Ordway* v. *Newburyport, supra. Barry* v. *Capen*, 151 Mass. 99. *Fox* v. *Rogers*, 171 Mass. 546. *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269, 278. Cases holding that contracts which provide for the doing of prohibited or illegal acts cannot be enforced are not pertinent to the facts in the case at bar. See *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356. *Keown & McEvoy Inc.* v. *Verlin*, 253 Mass. 374.

At the close of the evidence the defendant filed a motion for a directed verdict and also requested certain rulings. Both were denied. Upon the findings of the auditor and the evidence submitted at the trial the jury found for the plaintiff.

It is not disputed that the contract provided for hard plaster to be placed on the wooden laths. The trial judge instructed the jury in substance that the defendant, having proceeded to carry out the contract with the laths laid as he found them, was under an obligation to do what

the conditions required in order to perform the work in a good and workmanlike manner; and that if the conditions required him to use a different mixture or to apply more force in putting the plaster on in order to get a proper clinch, it was his duty to furnish such plaster and to place it upon laths with sufficient force to make a good and workmanlike job. These instructions were correct. If the jury found that the laths were improperly placed because laid without sufficient spacing between them, and that the fall of the plaster was due to an improper mixture of sand and gypsum, or to the failure of the defendant to use sufficient force in putting on the plaster in view of the laths being placed so close together, they were warranted in finding that the work was not done in a good and workmanlike manner as called for by the contract. It follows that the defendant's motion for a directed verdict was rightly denied.

The first request, that upon all the evidence the plaintiff could not recover, cannot be considered in view of Common Law Rule 44 of the Superior Court (1923). *Patton* v. *DeViney,* 259 Mass. 100, 102. *Bray* v. *Hickman,* 263 Mass. 409, 416. The defendant's second, third and fourth requests, which in substance call for a ruling that the plaintiff could not recover on the ground that he failed to comply with or that he violated the city ordinances, were rightly denied for the reasons hereinbefore stated. The defendant's fifth request, that, if the jury found upon all the evidence that the lathing was improper and such improper lathing contributed to the fall of the plaster, the plaintiff was not entitled to recover, could not properly have been given. As the action was in contract, the question for the jury was, in view of the character and condition of the laths and their insufficient spacing, whether the plastering was done in a workmanlike manner as called for by the contract. The defendant excepted to certain portions of the judge's charge. These exceptions need not be considered in detail; an examination of the parts excepted to shows no harmful error.

*Exceptions overruled.*