# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

---

LEWIS A. SCOLA *vs.* LORENZO SCOLA.

Suffolk.    January 2, 1945. — March 2, 1945.

Present: FIELD, C.J., LUMMUS, QUA, WILKINS, & SPALDING, JJ.

*Ship. Admiralty. Contract,* Validity. *Partnership,* Accounting. *Equity Jurisdiction,* Accounting, Plaintiff's clean hands.  *Custom.*

The enrollment and licensing of two fishing vessels in the name of a citizen as sole owner was in violation of the Federal enrollment statute where in fact one of the vessels was wholly owned by the citizen's father, an alien, and the other vessel was owned by both the father and the son.

A partnership agreement between two fishermen based upon the use, for the conduct of the partnership fishing business and the earning of profits therein, of fishing vessels enrolled and licensed in violation of the Federal enrollment statute was so tainted with illegality that one of the partners, who "knowingly and fraudulently" participated in obtaining the illegal enrollments and licenses, was barred from maintaining a suit against the other partner for an accounting of profits of the business.

The mere fact, that a partnership between a citizen and an alien operated vessels illegally enrolled and licensed under the Federal enrollment statute, did not preclude the citizen from establishing his title to an interest in one of the vessels which had been purchased by the partnership.

Even if a usage or custom were shown by the fact that many alien owners of fishing vessels caused them to be enrolled and licensed in the names of citizens in violation of the Federal enrollment statute, such usage or custom would be of no effect.

A citizen, who in contravention of the Federal enrollment statute obtained and used enrollments and licenses of fishing vessels in his name as sole owner knowing that an alien was in fact sole owner of one vessel and part owner with him of the other and that the purpose of such enrollments and licenses was to conceal the alien's ownership, acted "knowingly and fraudulently" within U. S. C. (1940 ed.) Title 46, § 60, although he was not advised that in doing so he was committing an offence against the Federal statute.

BILL IN EQUITY, filed in the Superior Court with a trustee writ dated August 23, 1943.

A master's report was confirmed by an interlocutory decree entered by order of *Donnelly, J.,* and a final decree was entered by order of *Warner, J.*

*H. C. Thompson,* for the defendant.

*T. D. Lavelle & S. M. Whalen,* for the plaintiff, submitted a brief.

WILKINS, J. The plaintiff is the defendant's son. This bill in equity seeks to establish a one-half interest in two fishing vessels, the "Lawrence Scola" and the "Richard J. Nunan," and in their net earnings. The case was referred to a master, who filed a report containing findings that the plaintiff was entitled to a one-half interest in the "Richard J. Nunan" and in the earnings of both vessels, but that the plaintiff was not entitled to any interest in the "Lawrence Scola." The defendant brought in objections, which became exceptions, to the report. Rule 90 of the Superior Court (1932). An interlocutory decree overruled the exceptions, and confirmed the master's report. A final decree for the plaintiff was entered. The defendant appealed from both decrees.

The defendant contends that certain conclusions of the master are expressly based upon his subsidiary findings, are inconsistent with them, and, therefore, cannot stand. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. *Goodwin* v. *Simpson,* 292 Mass. 148, 149. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435. *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 111.

The finding that "the plaintiff is the owner of a one-half interest in the 'Richard J. Nunan'" is not based upon the other facts found, and, therefore, must stand. It neverthe-

less is amply supported by such other facts, for example, that on "October 23, 1939, the plaintiff and the defendant purchased another fishing vessel, the 'Richard J. Nunan,' for $2,900, of which sum the plaintiff paid $1,400 and the defendant $1,500"; that "on and after the purchase the actual owners of that vessel were the plaintiff and the defendant"; and that "on October 30, 1940, the plaintiff and the defendant were joint owners of the 'Richard J. Nunan.'" The finding that "the plaintiff is still the owner of a one-half interest in the 'Richard J. Nunan'" is based upon "the constituent facts found," among which are the foregoing. There is nothing in the findings, including those respecting the Willard transaction, referred to below, inconsistent with the conclusion that the plaintiff had not lost his one-half ownership. These findings must stand.

The defendant contends that the finding "that from and after March 23, 1937, the relationship between the plaintiff and the defendant was that of equal partners," which is expressly based on "the constituent facts," is not supported by them. We do not discuss this contention, as, upon the allegations of the bill of complaint and upon other facts appearing in the master's report, we are of opinion that the contract of partnership and the conduct of its business were founded upon the fact that the vessels were not enrolled and licensed in compliance with the statutes of the United States, and that this court ought not to give aid to the plaintiff to obtain an accounting. This defence is set up in the answer.

The following facts are summarized from the master's report. Since 1930 the plaintiff had been a fisherman with the defendant on the latter's vessel, the "Lawrence Scola." The plaintiff became of age on March 23, 1937, and thereafter until August, 1943, the defendant and he were partners in equal interest. The "Lawrence Scola," tonnage twenty-one tons, had been built for the defendant in 1930, and immediately enrolled and licensed in the name of the defendant's son Paul Scola, as owner. "This was done because the defendant was an alien and the United States statutes required that owners of fishing vessels of this type

be citizens of this country." See U. S. C. (1940 ed.) Title 46, §§ 19, 221, 251, 252. The plaintiff knew that the defendant was the actual owner and was aware of the reason for the use of Paul Scola's name. On March 8, 1939, the vessel was enrolled and licensed in the plaintiff's name. In one place the master finds that this was at the plaintiff's request acceded to by the defendant, and in another that both this vessel and the "Richard J. Nunan" were enrolled in the plaintiff's name "with the consent and at the request of the defendant." On October 23, 1939, the plaintiff and the defendant purchased the "Richard J. Nunan," tonnage fifty-five tons, and forty years old. The vessel was thus enrolled and licensed in the plaintiff's name as owner, although the actual owners were the plaintiff and the defendant. "[Many] fishing boats owned by Italian aliens are registered in the names of citizens of the United States in order to comply with the statutes of this country prohibiting the enrolling of fishing vessels in the name of aliens . . . . [The] plaintiff was not advised by anyone that he was committing an offence against the laws of the United States when the two boats were enrolled in his name as owner and he made oath to such ownership at the Custom House. He knew, however, that he was not the sole owner of either vessel, and that his father was not an American citizen, which was the reason for registering title in the plaintiff's name." On May 15, 1941, the parties consulted an attorney in Maine, and upon his advice, "solely for the purpose of protecting the defendant in the event of the plaintiff's death, or in the event that he should be drafted and it became necessary to use them," the plaintiff wrote the defendant a letter enclosing bills of sale of the two vessels with the name of the grantee left blank and purporting to authorize the defendant to fill in the name of any person as grantee. In August, 1943, at the defendant's request Philip G. Willard, Esquire, a Maine attorney, inserted his own name in both bills of sale as grantee, recorded them at the custom house in Portland, and enrolled the vessels in Willard's name. The plaintiff did not consent to these transfers, and Willard held nominal title

merely as agent or attorney for the defendant. The original bill of complaint named Willard as a defendant, but, no service being obtained, was dismissed as to him. We do not view the Willard transaction as of importance to the questions here considered.

The "Lawrence Scola" and the "Richard J. Nunan," as individually owned coasting vessels enrolled and licensed, could retain the status of vessels of the United States only so long as their owners were citizens of the United States, and they were "liable to forfeiture" under U. S. C. (1940 ed.) Title 46, § 60, if their enrollments or licenses were obtained or used "knowingly and fraudulently." *Braga* v. *Braga,* 314 Mass. 666, 668–670. While it was unnecessary to do more than to assume the principle without decision in the *Braga* case (see page 668), it must be taken as established that ownership of an equitable interest by an alien is repugnant to the statute. *Weston* v. *Penniman,* 1 Mason, 306, Fed. Cas. No. 17,455. *United States* v. *The Fideliter,* 14 Int. Rev. Rec. 142, Fed. Cas. No. 15,088. *Scudder* v. *Calais Steamboat Co.* 20 Law Rep. 498, Fed. Cas. No. 12,566. *Hall* v. *Hudson,* 2 Sprague, 65, Fed. Cas. No. 5,935. *United States* v. *Gilbert,* 126 Fed. (2d) 206.

The partnership arrangement was originally based solely upon the operations of the "Lawrence Scola," and later embraced also the operations of the "Richard J. Nunan." The partnership agreement contemplated the use of both vessels under enrollments in contravention of the laws of the United States, and all profits were intended to be, and have been, acquired in this way. The illegal enrollments and licenses were the means adopted for the conduct of the partnership business and for obtaining the apparent status of vessels of the United States for two vessels not entitled to it. The arrangement, so far as concerns recovery of profits, cannot be distinguished from that in *Fouquette* v. *Millette,* 310 Mass. 351. See *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 123; *Joe Gouy Shong* v. *Joe Chew Shee,* 254 Mass. 366, 370.

The plaintiff contends that there was nothing illegal about the partnership agreement itself, that illegality formed

no part of the consideration, and that "the illegality of one contract does not extend to another contract unless the two are united either in consideration or promise." See *Higgins* v. *Fitzgerald,* 266 Mass. 176, 179. The plaintiff relies upon the findings of the master: "that when the plaintiff became of age on March 23, 1937, he and the defendant associated themselves together to carry on a joint business for their common benefit, to wit, the catching and marketing of fresh fish; that the plaintiff contributed his services, and the defendant provided the fishing vessel 'Lawrence Scola' and also contributed his services; that from and after March 23, 1937, the relationship between the plaintiff and the defendant was that of equal partners; that as such partners they purchased the 'Richard J. Nunan' in October, 1939." This clearly identifies the latter vessel as part of the partnership arrangement. These findings, however, were expressly based on "the constituent facts," which show that the agreement from the outset was closely tied to the "Lawrence Scola" also. Among the subsidiary findings are these: "Shortly after the plaintiff became of age on March 23, 1937, the defendant urged the plaintiff to stay with him on the 'Lawrence Scola,' draw no compensation for his services, leave his money in the business, and permit the defendant to use it to pay off the debts of the boat. The plaintiff did so . . . The net proceeds from the sale of fish, after payment of wages and expenses, were retained by the defendant and applied toward the discharge of the debts of the 'Lawrence Scola,' until the vessel was freed from debt; and thereafter such proceeds were deposited in the defendant's account. . . . [The] plaintiff remained with his father and allowed the latter to retain the money to which he would have been entitled because he was led by the defendant to believe that they were in the fishing business together, would share the profits equally, and . . . the plaintiff's position was not that of a mere employee or member of the crew. In this connection, it is to be borne in mind that there could be no profits until the 'Lawrence Scola' was freed from debt . . . The inducement for the plaintiff to accede to his father's request was the increased earnings

of the vessel which might reasonably be expected after she was freed from debt and in which he was to share." The allegations of the bill of complaint equally clearly involve the "Lawrence Scola" in the original agreement. Faced with these facts there is no chance for the application of the doctrine of such cases as *Barry* v. *Capen*, 151 Mass. 99, 100, *Fox* v. *Rogers*, 171 Mass. 546, 547, *Palefsky* v. *Connor*, 270 Mass. 410, 416, and *Morello* v. *Levakis*, 293 Mass. 450, 451. Compare *O'Gasapian* v. *Danielson*, 284 Mass. 27, 34, and cases cited.

The plaintiff is not assisted by the finding that many fishing boats of Italian aliens are registered in the names of citizens. This falls short of being a finding that there was a usage or custom. But even a usage or custom contravening a statute or opposed to public policy is invalid. *Commonwealth* v. *Doane*, 1 Cush. 5, 9. *Conahan* v. *Fisher*, 233 Mass. 234, 239–242. *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 600. *King* v. *Gannon*, 261 Mass. 94. *Basey* v. *Gallagher*, 20 Wall. 670, 684. *Wolfe* v. *Texas Co.* 83 Fed. (2d) 425, 431. *United States* v. *The Forrester*, Newb. 81, Fed. Cas. No. 15,132.

The fact that the plaintiff was not advised that his making oath to sole ownership was contrary to law likewise does not benefit him. *Commonwealth* v. *Everson*, 140 Mass. 292, 295. *Commonwealth* v. *O'Brien*, 172 Mass. 248, 256. See *Commonwealth* v. *Brisbois*, 281 Mass. 125, 127–128; *Peacock* v. *United States*, 125 Fed. 583, 587–588. He was at all times familiar with the state of the beneficial ownership in both vessels, knew that his father was an alien, and understood the purpose of masking these facts in the enrollments and licenses. It would be trifling with the Federal statutes to adjudge him an innocent party to the forbidden acts of obtaining and using the enrollments and licenses "knowingly and fraudulently." He acted "knowingly" because he had "a perception of the facts requisite" to the prohibited acts. *Commonwealth* v. *Horsfall*, 213 Mass. 232, 237. *Commonwealth* v. *McKnight*, 283 Mass. 35, 39–40. *Brennan* v. *Schuster*, 288 Mass. 311. He acted "fraudulently" throughout because he intentionally used false enrollments and

licenses which suppressed the alien ownership contrary to the statutes, and some of these enrollments and licenses he himself obtained by swearing falsely with similar intent. *United States* v. *Gilbert*, 126 Fed. (2d) 206, 207. See *Commonwealth* v. *Tuckerman*, 10 Gray, 173, 203; *Commonwealth* v. *O'Brien*, 305 Mass. 393, 397–398; *Peacock* v. *United States*, 125 Fed. 583, 587; *Columbia-Knickerbocker Trust Co.* v. *Abbot*, 247 Fed. 833, 857. We do not think that the master has found by implication that the enrollments and licenses were not "knowingly and fraudulently" obtained and used. But if there were such a finding, it could not stand along with the other specific facts found. *MacLeod* v. *Davis*, 290 Mass. 335, 337. Both parties rely upon *Cambioso* v. *Maffett*, 2 Wash. C. C. 98, Fed. Cas. No. 2,330, in which the main point decided supports what we have held herein, and we do not regard anything in that opinion as an authority to the contrary. See *Maybin* v. *Coulon*, 4 Dall. 298.

This is not a case where profits are held by a virtual stakeholder subject to order of the court, as in *Braga* v. *Braga*, 314 Mass. 666, 668, 673. The third exception to the master's report should have been sustained. [1]

It does not ensue, however, that the plaintiff is barred from asserting his one-half interest in the "Richard J. Nunan." Enrollment does not affect title but confers the character and privileges of an American vessel. *Hozey* v. *Buchanan*, 16 Pet. 215, 219–220. See *Southern Bell Telephone & Telegraph Co.* v. *Burke*, 62 Fed. (2d) 1015, 1016. The purchase of this vessel was effective to transfer title to the plaintiff and the defendant notwithstanding the failure to comply with the statutory requirements which deprived her of the status of a vessel of the United States and rendered her subject to forfeiture. *Fox* v. *Paine*, Crabbe, 271, Fed. Cas. No. 5,014. *Philips* v. *Ledley*, 1 Wash. C. C. 226, Fed. Cas. No. 11,096. *United States* v. *The Forrester*, Newb. 81, Fed. Cas. No. 15,132. *Weston* v. *Penniman*, 1 Mason, 306, Fed. Cas. No. 17,455. *Braga* v. *Braga*, 314 Mass.

---

[1] The third exception was "to the finding by the master that the plaintiff is entitled to an accounting and relief." — REPORTER.

666. See *Hatch* v. *Smith*, 5 Mass. 42, 53. The plaintiff could not lose his ownership in the vessel to the defendant by the unlawful enrollment solely in his own name, by her unlawful use, or by the later unauthorized enrollment in the name of Willard.

From the record in another proceeding between the parties now before us (reported following this case), it appears that subsequent to the final decree the "Richard J. Nunan" has been judicially sold in Maine, and the defendant has been ordered to give bond or to pay cash into court whereby to satisfy any decree in this case. The interlocutory decree is modified by sustaining the third exception to the master's report and, as so modified, it is affirmed; the final decree is reversed; a decree is to be entered to the effect that the plaintiff is entitled to the value of a one-half interest in the "Richard J. Nunan"; and the case is to be further heard on the matter of the relief to be given the plaintiff in lieu of such one-half interest.                    *So ordered.*